## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROSINA DENISE COOK ) | Case No. 16−32472−KRH |
| ) | Chapter 13 |
| Debtor ) | |

### AMENDED MOTION TO INCUR DEBT

COMES NOW, the Debtor, by counsel, and as and for her Motion to Incur Debt, states as follows:

1.      The Debtor filed this case under Chapter 13 of the U.S. Bankruptcy Code on May 16, 2016.

2.      The Debtor has applied for and Movement Mortgage, LLC has pre-approved a FHA fixed-rate home mortgage to the Debtor in the amount of $354,815.00 plus interest estimated at 5.250% and APR estimated at 6.268% to be repaid with 360 equal monthly payments of around $2,519.79 for the principal, interest, taxes, and insurance.  The Pre-approval Letter is attached hereto as Exhibit A and the Approximate Loan Cost Illustration is attached hereto as Exhibit B and are incorporated herein by this reference.

3.      The Debtor has entered into a contract ("Contract") to purchase the property ("Property") located at 5149 Virgil Drive, Henrico, Virginia 23231, which is also described as Lot 18, Section D in the Community of Mansfield Woods in the County of Henrico.

4.      On February 22, 2019, or as soon thereafter as may be practicable, the Debtor intends to close on the Property per the terms of the Contract.  Said Contract is attached hereto as Exhibit C and is incorporated herein by this reference.

5.      The Debtor needs to purchase the referenced property because she is the mother to four children, all whom live with her, and her family has outgrown their rental.  The source of funds for the approximate $12,740.28 down payment will be from her increase in income due to two job promotions, child support, and tax refunds.

6.      The purchase of the property is in the best interest of the Debtor and will facilitate her ability to perform under her Chapter 13 Plan filed herein.

7.      The Debtor's Chapter 13 Plan has been confirmed.

WHEREFORE, the Debtor requests that the Court enter an Order approving the aforesaid loan on the terms stated herein and for such other relief as the Court may deem appropriate.

ROSINA DENISE COOK

By: /s/ James E. Kane
                    Counsel

James E. Kane (VSB #30081)
KANE & PAPA, P.C.
1313 East Cary Street
Richmond, VA  23219
(804) 225-9500 (phone)
(804) 225-9598 (fax)
*Counsel for Debtor*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 14, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record who have signed up to receive such notification and by first class mail to the parties on the attached list.

/s/ James E. Kane
James E. Kane

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

---

IN RE:                                               )
                                                     )
ROSINA DENISE COOK                                   )          Case No. 16−32472−KRH
                                                     )          Chapter 13
                                    Debtor           )

---

## NOTICE OF MOTION

The above Debtor has filed an Amended Motion to Incur Debt in the above matter.

<u>Your rights may be affected</u>.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the relief sought in the motion, or if you want the court to consider your views on the motion, then, within twenty-one (21) days from the date of this Notice you or your attorney must:

- File with the court, at the address shown below, a written request for a hearing [or written response pursuant to Local Bankruptcy Rule 9013-1(H)].  If you mail your request for a hearing (or response) to the court for filing, you must mail it early enough so the court will <u>receive</u> it on or before the date stated above, to:

    Clerk of Court
    United States Bankruptcy Court
    701 East Broad Street
    Richmond, VA  23219

You must also mail a copy to:

    James E. Kane, Esquire
    Kane & Papa, P.C.
    P.O. Box 508
    Richmond, Virginia 23218-0508

- Attend a hearing to be scheduled at a later date.  You will receive a separate notice of hearing.  <u>If no timely response has been filed opposing the relief requested, the court may grant the relief without holding a hearing.</u>

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Dated:  September 14, 2018                                        ROSINA DENISE COOK


                                                    By: /s/ James E. Kane
                                                               Counsel


                                                    James E. Kane (VSB #30081)
                                                    KANE & PAPA, P.C.
                                                    1313 East Cary Street
                                                    Richmond, VA  23219
                                                    (804) 225-9500 (phone)
                                                    (804) 225-9598 (fax)
                                                    *Counsel for Debtor*


## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record who have signed up to receive such notification and by first class mail to the parties on the attached list.


                                                    /s/ James E. Kane
                                                          James E. Kane

Exhibit A


Exhibit A



Date Issued: September 12, 2018

**Congratulations Rosina Denise Cook**, I am thrilled to let you know that you have been issued a Pre-Approval!

Movement's Pre-Approval is a little different than the industry standard Pre-Approval or Pre-Qualification. Receiving this document means that one of our experienced Underwriters has reviewed your income and credit documentation and made a decision that you are pre-approved to purchase your new home, based on the following terms:



*Learn more at
MOVE.MN/IMPACT*

## PROPOSED LOAN TERMS

**Address:** tbd, Henrico, VA 23231

| | |
|---|---|
| **Loan Type:** FHA | **Loan Amount:** $354,815.00 |
| **Purchase Price:** $364,008.00 | **Expiration Date:** 8/7/2018 |

At Movement, we're on a mission to love and value people by leading a Movement of Change in our industry. That means guiding you and your real estate agent through your home purchase. If you have any questions or concerns, I'm here to help.



*Learn more at
MOVE.MN/PROCESS*

Sincerely,

**Jennifer Loth**
Loan Officer | 186040
jennifer.loth@movement.com | (804)381-0847x11847



*5 time Inc. 5,000
Fastest Growing
Company*

f5510p1 05/25/18 sssm pd:9/12/18



2562779-5510-1-2-199

 | DISCLOSURES

This Pre-approval is for loan amount of $354,815.00 based on a sales price of $364,008.00.

An underwriter has reviewed certain information provided by you and is issuing this Pre-approval based upon this information. This Pre-approval is subject to the verification of the accuracy of the information submitted, your financial condition and your credit worthiness not materially changing after such verification and the identification of a subject property (if one has not already been identified) that meets Movement's appraisal guidelines. Additionally, a final Mortgage Loan Approval will only be issued upon a review and approval of a complete loan application, appraisal, title report, and other supporting documentation as may be required by your underwriter or Movement's underwriting guidelines.

When we receive a completed application for your mortgage loan and complete the required remaining verifications (outlined above), Movement will set an estimated Closing Date based upon your request and an estimate of the time that it will take to finish processing and underwriting your mortgage loan application. Please be advised that any Closing Date is an estimate and while Movement will make reasonable efforts to meet the estimated Closing Date, events may occur that may require that your closing be delayed.

If you have any questions about this letter or the status of pre-approval, please call me directly at (804)381-0847x11847. All of us here at Movement appreciate the opportunity to earn your business.

VA - MLO-304VA | Movement Mortgage, LLC supports Equal Housing Opportunity. NMLS ID #39179 (www.nmlsconsumeraccess.org) | 877-314-1499. Movement Mortgage, LLC is licensed by AL # 21022, AK # AK39179, AZ # 0918544, AR # 105002, "CA Department of Business Oversight under the California Residential Mortgage Lending Act" # 4131054, "CO Regulated by Division of Real Estate", CT # ML-39179, DE # 012644, District of Columbia Mortgage Dual Authority License #MLB39179, FL # MLD200 & MLD1360, GA # 23002, ID # MBL-8027 & RRL-9397, "Illinois Residential Mortgage Licensee" # MB.6760898, IN # 18121, IA # 2013-0023 & 88883410, "Kansas Licensed Mortgage Company" # SL.0026458, KY # MC85066, LA, ME # 39179, MD # 19094, MA Banker & Lender # MC39179, MI # FR0018717 & SR0020189, MN # MN-MO-39179, "Mississippi Dept of Banking and Consumer Finance" # 39179, MO # 16-2096, NE, NV # 3402 & 3401, Licensed by the New Hampshire Banking Department 20985-MB, "Licensed by the N.J. Department of Banking and Insurance", NM, "Licensed Mortgage Banker-NYS Banki ng Dept" #B500997, NC # L-142670, ND # MB102519, OH # SM.501922.000 & MB.804187.000, OK # ML002646, OR # ML-5081, PA # 34374, Rhode Island Licensed Lender, Broker and Servicer 20153194LL & 20153195LB & 20153196LS, SC # MLS-39179, SD # ML.05007, TN # 112748, TX, UT # 7773921, VT #M 6862 & 39179-1, VA # MC-5112, WA # CL-39179, WV # MB-32019 & ML-32020, WI # 39179BA & 39179BR. Interest rates and products are subject to change without notice and may or may not be available at the time of loan commitment or lock-in. Borrowers must qualify at closing for all benefits. "Movement Mortgage" is a registered trademark of the Movement Mortgage, LLC, a Delaware limited liability company. 8024 Calvin Hall Rd, Indian Land, SC 29707.

f5510p2 09/22/17 ss pd:9/12/18

2562779-5510-2-2-199

Exhibit B





**Your actual rate, payment, and costs could be higher. Get an official Loan Estimate before choosing a loan.**

Date Prepared: September 14, 2018
Applicant(s): Rosina Denise Cook
Programs: FHA 30
Loan Officer: Jennifer Loth
NMLS: 186040

Loan Number:

Cell Phone:

# APPROXIMATE LOAN COST ILLUSTRATION

The information provided below regarding Approximate Cost of Closing Fees, Approximate Total Funds Needed To Close and the Approximate Total Monthly Payment (collectively referred to as Approximate Loan Cost Illustration) are only approximations. **This is an Approximate Loan Cost Illustration and is NOT a mortgage loan approval or commitment to lend.**

| APPROXIMATE COST OF CLOSING FEES | |
|---|---|
| Appraisal | $600.00 |
| Credit Report Fee | $75.00 |
| Underwriting Fee | $895.00 |
| Flood Certification Fee | $7.00 |
| IRS Transcript Fee | $20.00 |
| Examination | $100.00 |
| Settlement Service | $425.00 |
| Lenders Title Insurance | $1,018.64 |
| Document Preparation | $100.00 |
| Closing Protection Letter | $20.00 |
| Abstract | $150.00 |
| Binder | $100.00 |
| Recording Deed | $43.00 |
| Transfer Taxes | $619.03 |
| Grantor Tax County | $192.68 |
| Transfer Taxes | $1,857.09 |
| Grantor Tax County | $182.00 |
| Recording Mortgage | $76.00 |
| Grantor Tax State | $192.68 |
| Grantor Tax State | $182.00 |
| **Total Approximate Cost of Closing Fees** | **$6,855.12** |
| APPROXIMATE COST OF PREPAID INTEREST AND ESCROW/RESERVES | |
| Interest for 30 days @ $51.04 per day | $1,531.20 |
| Hazard Insurance Premium | $591.96 |
| Hazard Insurance Escrows | $98.66 |
| County Property Taxes | $791.73 |
| Aggregate Adjustment | -$246.68 |
| **Total Approximate Cost of Prepaid Interest and Escrows** | **$2,766.87** |
| **Total Approximate Cost of Settlement Charges** | **$9,621.99** |

| APPROXIMATE TOTAL OF FUNDS NEEDED TO CLOSE | | | APPROXIMATE TOTAL MONTHLY PAYMENT | | |
|---|---|---|---|---|---|
| Purchase Price/Total Liens | $364,008.00 | | Interest Rate | | 5.250% |
| less Earnest Money/Credits | $1,000.00 | | APR | | 6.268% |
| less Total Loan Amount | $354,815.00 | | Maturity Term | 360 mos | 30 yrs |
| less Secondary Financing Amount | $0.00 | | | | |
| less Borrower's closing cost paid by Seller | $749.36 | | Principal & Interest (or Interest Only payment) | | $1,959.30 |
| plus Mortgage Insurance or Funding Fee | $3,548.16 | | Other Financing (P&I) | | $0.00 |
| plus Approximate Closing Fees Pd by Borrower | $6,855.12 | | Real Estate Taxes | | $263.91 |
| | | | Insurance | | $49.33 |
| plus Approximate Pre-paid Items/Reserves | $2,766.87 | | Homeowners Association (if applicable) | | $0.00 |
| less POC fees paid by Borrower | $0.00 | | Mortgage Insurance (if applicable) | | $247.25 |
| | | | Other | | $0.00 |
| **Total Approximate Funds needed to close** | **$20,613.79** | | **Total Approximate Monthly Payment** | | **$2,519.79** |

| Down Payment | $12,740.28 | 3.50% |
|---|---|---|

The Total Approximate Monthly Payment is based on the principal amount, loan term and interest rate shown and assumes a fixed rate loan. Your interest rate may be different and will be determined after you apply for a loan.

f5151 10/06/15 sm pd:9/14/18

# SHURM ⌂ HOMES

## NEW HOME PURCHASE AGREEMENT

This New Home Purchase Agreement is made this _21_ day of _July_, 20 _18_ ("Effective Date"), between Shurm Construction, Inc. (the "Seller"), and _Rosina Denise Cook_ (the "Buyer"). This new home Agreement and any addenda, exhibits and disclosures attached hereto are collectively referred to as the "Agreement."

1.  **PROPERTY.** The Buyer (identified above) agrees to buy and Seller agrees to sell and convey the Property described as Lot _18_, Block ___, Section _D_ in the Community of _MANSFIELD WOODS_ _____ City/County of _HENRICO_ _____, Virginia.

    Street Address: _5149 VIRGIL DR HENRICO VA 23231_ _____

    Improvements shall include a residence constructed thereon in substantial conformity with the plans, specifications and features known as the _HAMILTON_ Plan upon the terms and conditions described herein (the "Agreement"). Seller may not own legal title to the Lot, nor may the subdivision plat establishing the Lot be recorded on the Effective Date of this Agreement. Nevertheless, this Agreement is contingent upon the recordation of the subdivision plat for the Lot and Seller obtaining legal title to the Lot. If for any reason Seller is unable to obtain legal title to the Lot, this Agreement may be terminated with no penalty to either party.

2.  **PURCHASE PRICE.** The Purchase Price is _THREE HUNDRED TWENTY TWO THOUSAND_ Dollars _Two Hundred_ ($ _322250_ _____) (the "Purchase Price"), to include _ONE THOUSAND_ _Fifty_ Dollars ($ _1000_ _____earnest money deposit (the "Deposit") made with this Agreement and to be held by Seller until Settlement (as defined herein) and applied to the Purchase Price at Settlement. The Deposit may be held in an interest bearing account, and in the event interest is paid, Buyer and Brokers agree to waive any claim to such interest. During the term of this Agreement, should any mathematical errors be made in the calculation of the Purchase Price at any time, the error(s) shall be corrected and the resulting amounts due by any party to the other shall be promptly paid. In the event of a termination of this Agreement in response to Buyer's default, Seller shall retain the Deposit.

3.  **ALL CASH SALE:** Buyer may pay the Purchase Price in all cash and without any mortgage loan provided Seller receives documentation from a Third Party in possession of Buyer's assets to verify sufficient funds to close within five (5) business days of the Contract Date and thereafter whenever requested by Seller. If proof of funds is not satisfactory to Seller, Buyer may be required to make application to a Lender acceptable to Seller. If Buyer fails to comply with such request, or the provisions in this paragraph, Seller may terminate Agreement and Deposit will be retained by Seller. Once Seller receives satisfactory documentation, construction will commence as practicable.

4.  **LOAN APPLICATION.** If any box below is checked, this Agreement is contingent upon the following:
    a.  **FINANCING.** The Buyer's obligation hereunder is contingent upon the Buyer having obtained a written commitment for a First Deed of Trust (check one):
    ☐ Conventional Loan ☑ FHA Loan ☐ VA Loan ☐ Other: _____
    with _MOVEMENT MORTGAGE_ (Lender) on the Property for at least $_____ at the then prevailing market rate.

    Buyer agrees to make written application for the loan within seven (7) business days of contract execution and will make every effort to secure the loan and will accept said loan once approved. If Buyer does not make written loan application within the aforesaid seven (7) business days, if the loan is approved and not accepted, or if Buyer, in Seller's sole discretion, does not use good faith in attempting to procure a mortgage loan, Buyer shall be in default of this Agreement and Seller may exercise any remedies it may have hereunder including but not limited to retention of the Deposit as liquidated damages, and declare this Agreement null and void, in which any sums paid for optional extras shall be forfeited by the Buyer and retained by Seller as partial liquidated damages. In addition, this Agreement is further subject to the Buyer being approved for the loan aforesaid within thirty (30) days of the Contract Execution Date, which said approval means the written commitment of the Lender to make the loan without the fulfillment of conditions dependent upon the action of third parties, such as the sale of other real estate or increase in salary. If Buyer has not obtained loan approval satisfactory to Seller within thirty (30) days from the date of the Agreement, Seller may terminate the Agreement, return the deposit less an administration fee in the amount of $250.00 to Buyer, and have no further liability to Buyer; or Seller may delay commencement of construction until a satisfactory approval is received. The Buyer shall be in default if Settlement does not occur because the Buyer:

    i.  Fails to lock-in the interest rate(s) resulting in the Buyer no longer qualifying for such financing. Furthermore, during the construction process the Buyer's Lender requires that

the Buyer lock-in to a rate which may have expiration dates. Seller is not responsible for any financial consequences incurred by the Buyer due to the lock-in expiring prior to the Settlement of the Property.

ii. Does not have the funds to settle as provided in this Agreement at the time of Settlement; or

iii. Does any act following the date of full execution of this Agreement that prevents the Buyer from obtaining the financing.

**In addition to purchase price, Buyer agrees to pay all closing costs associated with the loan and settlement including, but not limited to, origination fees, discount points, appraisal fee, final inspection fee, credit report, VA funding fee, FHA or private mortgage insurance premiums, prepaids, title examination, lenders and owners title insurance, attorney's fees, transfer fees, state, local and grantor's recording taxes and survey.**

b. BUYER'S PERFORMANCE ABILITY. Buyer grants Seller permission to discuss with Buyer's Lender all details of Performance Ability (defined as Buyer's financial ability to secure a loan and otherwise perform the obligations set forth in this Agreement). Upon request, Buyer will promptly execute any documents required to evidence this permission. Buyer agrees by execution of this Agreement that any Lender to whom Buyer makes loan application is authorized to send a copy of Buyer's Loan Commitment Letter to Seller as such time as Buyer's Lender sends such Loan Commitment Letter to Buyer.

5. APPRAISAL. The Seller and Buyer agree and understand that if the appraised value of the Property is less than the purchase price as stated in this New Home Purchase Agreement, the Buyer must pay the difference between the appraised value and the purchase price or remove the optional selections and credit the payment made for these optional selections to purchase price. Removing any optional selections is subject to the Seller not having ordered the optional selections, begun construction on the optional selections and/or not impacting the status of the building permit on the Property.

6. OCCUPANCY. Buyer intends ☒ to occupy ☐ not to occupy the Property as a principal residence.

7. CONTINGENT CONTRACTS. If either box below is checked, then Buyer's obligation hereunder is contingent upon the sale ☐ and/or closing ☐ on _____ day of _____ 20_____ of the Buyer's existing residence located at __/__/__ Within five (5) days after the Contract Date, Buyer shall provide proof that a licensed Real Estate Agent is marketing the Buyer's existing residence for sale or that a non-contingent contract exists on the Buyer's existing residence. It is further understood that Seller has the right not to commence construction of the Improvements until all contingencies are removed. Seller shall provide a revised Settlement Date (as defined below) when all contingencies have been satisfied and construction of the Improvements commences. So long as this contingency remains in effect, Seller shall be entitled to market the Property for sale and accept additional contracts which are not contingent upon the sale of real estate to settle. Upon receipt of another contract acceptable to Seller, Seller shall give written notice to Buyer or their agent, and Buyer shall have 48 hours from receipt of such notice to waive this contingency by written notice to Seller or the Listing Broker/Agent, and simultaneously deliver to same written proof that a loan commitment has been obtained which is not contingent on the sale of Buyer's present home; or, a conditional commitment or statement provided by a bank official for a loan which may affect each contract, which clearly states that according to all information given at loan application and verified to date, there is no known reason why loan will not be approved. The statement must specify it is not conditioned on Buyer renting subject property in order to qualify unless that property is already under a fully executed sale or rental agreement satisfactory to lender. If Buyer fails to remove contingency within 60 days of contract date (purchasers home, which is referenced above) is under contract with no contingencies such as loan approval or home inspection, etc.) or by the Settlement date, whichever comes first, then Seller shall have the option, in its sole discretion, to terminate this Agreement and return the Deposit to the Buyer or renew the contingency and any price adjustment, if required, will be mutually agreed upon and applied.

8. ESTIMATED START AND COMPLETION DATE. The Start Date shall be the date on which work on the construction of Improvements begin, which date shall be within thirty (30) days after receipt of a building permit (except in those instances where Settlement is contingent upon Buyer's sale of property or if proof of loan application has not been received by Seller). The Approximate Completion Date shall be the date when the Improvements are completed in substantial compliance with plans and specifications and a certificate of occupancy has been issued by the applicable City/County. Completion does not require that all improvements in the subdivision be completed, and the Buyer acknowledges that improvements may continue to be made in the subdivision after Settlement. Seller, without obligation or warranty, estimates the Approximate Completion Date to be on or before _____ 2/1/19 _____. Seller reserves the right to revise the Approximate Completion Date as well as the Start Date

**If after 90 days all contingencies are not removed, builder has the right to cancel the contract and refund deposit to owners without penalty.**

9. SETTLEMENT. Settlement of the sale and purchase of the Property ("Settlement") shall be _____ 2/22/19 _____ and shall be held at the offices of Buyer's closing agent, _____ DAY TITLE _____. Buyer hereby agrees that time is of the essence with regards to Buyer's obligation to close this purchase. This means that the failure to do what is required within the timeframes specified in this Agreement is a default under the Agreement. The Settlement Date is an estimate only, and

Initials _RPC_

if in any event the Agreement Settlement Date is not met, Seller will notify the Buyer or Buyer's Real Estate Agent either verbally or in writing when the house is complete and ready to close. Buyer hereby agrees to immediately close on the Property after notification. If for any reason Settlement is postponed through no fault of the Seller, and not as a penalty, Buyer agrees to pay Seller in the amount of $100.00 per day for each day that Settlement is postponed from the Agreement Settlement Date or from the notification of Completion Date; notwithstanding punch list items. Further, Buyer agrees that Seller will not be held liable for any delay in the completion of work including but not limited to weather conditions, and material or manpower shortages.

   a. THE DEED. At Settlement, Seller shall convey to Buyer good and marketable fee simple title to the Property by deed of general warranty within English Covenants of title (the "Deed"), free of all liens, defects and encumbrances, except the Permitted Exceptions (as defined herein). Buyer shall have a reasonable time following the Contract Date to examine title to the Property and to give written notice to Seller of any title objections which affect the marketability of the title to the Property other than the following matters (the "Permitted Exceptions"): (i) real property taxes due subsequent to Settlement; (ii) matters not adversely affecting the use of the Property for residential purposes disclosed by a current and accurate survey of the Property; (iii) easements for drainage, sewer, and utilities and other easements, restrictions, covenants, limitations, and encumbrances that do not materially adversely affect the use of the Property for residential purposes; (iv) monetary liens which shall be satisfied at Settlement from the proceeds of the sale; and (v) all objections to title which Buyer waives or is deemed to have waived. If the title objection is not corrected within sixty (60) days after Seller receives notice of the objection, then either party may terminate this Agreement at the expiration of the sixty (60) day period. Upon termination of this Agreement, Buyer's Deposit shall be paid in accordance with this Agreement and neither party shall have any further obligation hereunder.

   b. SETTLEMENT STATEMENT. Seller and Buyer authorize and direct Settlement Agent to provide a unified copy of the HUD-1 Settlement Statement for this transaction to the Seller, Buyer, Listing Broker and the Selling Broker.

10. WARRANTIES.: Contractor warrants adequate insurance, skilled workmanship, tradesmen, and materials used in conformance with the Plans and Specifications, pursuant to the terms of this Contract and that all work will be performed in a skilled and workman-like manner to pass the custom or trade of construction residential homes. In addition, it is expressly agreed that Contractor does not warrant or guarantee against "hairline" cracks in either the block, brick foundation, and/or on concrete work, including but not limited to sidewalks, steps, pad, floors or walls, but will use its best efforts to avoid the same. Hairline cracks, nail pops, blisters in tape, and other blemishes in drywall are not unusual in interior wall and ceiling surfaces. Cracks greater than 1/8 inch in width and defects seen in natural light which appear during the first-year warranty such as nail pops, blisters in tape, or other blemishes are to be repaired by the Builder one-time during the first year of the warranty period. Homeowner is responsible for all sanding and painting once the repair has been completed. Such blemishes are to be provided to the Builder in a written document during the 11-month timeframe. Imperfections in drywall shall be identified with Project Manager during a walk-thru by standing 6 feet away from drywall surface. Imperfections seen in critical lighting conditions are not considered warrantable repairs. If Owner requests further touch-ups and/or painting, Builder, at sole discretion, will complete requests for cost of time and material. This contract incorporates by reference all warranties as are set out in the Code of Virginia, 1950, as amended, in reference to the construction of new residential dwellings. In addition, the Contractor warrants that all improvements to the property will be constructed in strict compliance with Contract Documents (as said term is defined in this Contract). Contractor will transfer to owner all warranties made to it by manufacturers, subcontractors, installers, or other suppliers of parts or equipment for Owner's new home.

It is expressly agreed that Contractor does not warrant or guarantee against: Floor squeak and loose subfloor are often a temporary condition common to new home construction, and a squeak-proof floor cannot be guaranteed. We will correct the problem if caused by faulty construction within reasonable repair capability. There are times when there is a variation in color or composition from one sample of tile, brick granite, paint, vinyl, etc., to another by the same manufacturer. These variations cannot always be controlled. Where a repair is made to paint, concrete or asphalt surface, color and finish of the repaired area may not match the adjacent surface. Variations of grain pattern and color are normal in wood veneer and solid wood cabinets and doors.

11. GENERAL CONDITIONS.
   a. CONSTRUCTION PROCESS / SCHEDULE. The quality of workmanship will not be compromised to meet an approximate completion date. Seller takes pride in the quality of workmanship and the final product. At times due to weather, city/county inspections or scheduling it may appear as if nothing is being done at the job site. Unforeseen delays are common and accepted in this industry. All dimensions on plans are rough framing dimensions only, and are approximate. Construction techniques and methods vary which in turn may change dimensions from house to house. Material shortages, changes in building codes, and improvements to the product (your home) may cause a substitution in any component of the house with a component of equal or greater value. Seller utilizes sub-contractors during each phase of the home building process who are specialists in each trade. To insure the quality of construction and that all warranties are intact, the purchaser may not supply any material or labor for the home. Seller strives to provide quality workmanship in a timely manner.

Initials _BDC_

2/1/2018

b.  JOB SITE VISITS. Because of insurance restrictions, Buyer must make appointments to visit the job site. Furthermore, visits to the job site during construction are at Buyer's own risk. Buyer agrees to hold Seller harmless for any and all injuries that may occur to the Buyer during any site visit and further agrees to abstain from discussions with any superintendent or subcontractor that may cause work delay or impede the construction process. Seller and Buyer hereby agree to be determined by Seller that if job site visits have become excessive enough to hinder the quality or timeliness of construction, Seller reserves the right to prohibit all job site visits until a walk thru is scheduled at the end of the construction process usually a week prior to Settlement.

c.  SELECTIONS. While the selection process does take time and can be overwhelming, it is Buyer's responsibility to make the necessary time required to complete this process. Selections should be completed prior to "breaking ground" on your home; however, on a case by case basis this deadline may be extended once for a period of thirty (30) days if all the necessary appointments have been made. Nevertheless, Seller reserves the right to make the standard selections (i.e. cabinets, countertops, appliances, floor coverings, etc.) for the Buyer, and such Selections shall be considered acceptable to the Buyer, if it is determined by Seller that the Buyer is not making a reasonable effort to complete the selection process or if the selections have not been made thirty (30) days after breaking ground, in order to prevent delays in the construction process or Settlement Date.

d.  PLAN MODIFICATIONS. All structural changes must be made prior to contract ratification. Seller will attempt to accommodate a Buyer's needs with plan modifications, however, Seller reserves right to decline any modifications post contract signing. Please note that additional fees may incur when modifying standard plans or features. The extent of the modification will determine the price which may include architectural fees. Please note that any changes/plan modifications made after contract ratification will incur a $1,200 processing fee in addition to charges/credits for the modification. All requests must be submitted on a Change Order form, signed, approved, and paid before any changes can be made. All modification charges executed on a Change Order form shall be deemed non-refundable if materials have been installed. Seller reserves the right to reject any requested changes and complete home construction per ratified contract.

e.  CLEARING. The County's Department of Planning and Zoning has strict setback requirements, and your lot will be cleared in order to position your home to meet these requirements. Easements (utility, drainage, etc.) and lot width / length may limit your options when positioning your home per plans or reversed. Usually fifteen (15) feet to twenty (20) feet around the home is generally cleared for construction and grading purposes. Additional clearing will be done at an additional expense to the Buyer.

f.  FOOTINGS. Standard size includes 8" thick, 18" wide, and 18" below grade. Questionable soil conditions may warrant additional depth, thickness or width, and where necessary, an engineer may specify additional requirements (i.e. reinforcing bar). A minimum of 3,000 p.s.i. concrete will be poured. Buyer and Seller hereby agree that unexpected site conditions arise (i.e. ledge, bedrock, high water table, or shrink/swell soil) on occasion that are undetectable by the Buyer or Seller which increase the cost of footing excavation, footing thickness, and/or foundation height. Buyer and Seller also agree there are standard allowances defined on the construction plans given to the Buyer for excavation, depth (18"), footing thickness (8"), and foundation height (4 – 5 courses of brick and/or block). Buyer hereby agrees to be solely responsible for all additional costs to correct the unexpected site conditions to include but not limited to extra excavation costs (hitting bedrock, etc.), increasing footing thickness or depth, or adding extra courses of brick or block which will be determined solely by Seller. Seller will notify Buyer of such cost increases in writing or verbally.

g.  LANDSCAPING / GRADING. The grading of the Lot and top soil application shall be determined solely by Seller taking into consideration current building standards. The yard will be graded and seeded no more than twenty (20) feet around the perimeter of the home and over the septic tank and drain field areas. Undisturbed areas of the lot will be left in their natural state and will not be graded. Poor drainage in these areas may be the result of topographic constraints associated with the site, and does not constitute a grading defect or deficiency and will not be addressed by Seller. Since the yard is a starter and there is no warranty against washout, erosion, grass growth or life of sod (when applicable), it is the responsibility of Buyer to maintain the lot. Seller does not guarantee the life of any tree or shrub.

h.  DRIVEWAY / SIDEWALK. Seller reserves the right to finish the driveway (including paving and grading) and sidewalk within ninety (90) days of the Settlement Date without escrow or as soon as weather and/or soil conditions permit. Sidewalks will be concrete, broom or aggregate finish, or as stated in standard features list. Should the driveway or sidewalk fail or crack, we will repair or patch the necessary area. The patchwork will not match due to time and raw material differences.

i.  EARLY POSSESSION. Because of liability and insurance restrictions, Buyer will not be allowed to have any possession of the Property or to store possessions (i.e. furniture) on the Property including inside the house or garage.

Page 4 of 8                                      Initials _RJC_

2/1/2018

j. **MODEL HOMES, COMPLETED HOMES AND HOMES UNDER CONSTRUCTION.** A model home includes many optional items that are used to showcase the detail of options Seller and its vendors has to offer. The Buyer acknowledges that many of these options may be incorporated into a model or speculative home, but may not be included in the base price of our standard home. The Buyer also agrees to refer to the Agreement, addenda, plans and specifications, and standard features for that specific subdivision to determine what will be included in the home the Buyer is purchasing. These standards supersede any architectural drawings, picture renderings or model homes viewed in neighborhoods or previously built homes. Representations by agents and/or brokers that are different from these specifications, and are not made part of the Agreement documents, will not be included in the Agreement. Existing conditions take precedence over these specifications for houses, which are complete, or already under construction. Furthermore, homes that are to be built or are under construction may not conform (i.e. available options, floor plan, front elevation, location of walks/driveway, patio and decks) to the model, completed homes and/or homes currently under construction. Seller reserves the right to modify floor plans, elevations, options, materials, etc. as to conform to local building codes, architectural review requirements, site requirements, lot size, structural considerations, and availability of methods and/or subcontractors.

k. **SURVEY. Buyer understands and agrees that Seller will order, on Buyer's behalf, a final Survey of the Property. The Survey will be provided to Buyer's settlement agent to be used in connection with the Settlement. Buyer agrees to pay the Seller at Settlement the amount of $400 up to 2 acres in a community for the final survey. Survey fees will be adjusted accordingly on any property not within one of our communities or over 2 acres.**

12. **TERMITE PROTECTION.** A professional termite company will treat your home for termites by poisoning the soil at foundation stage. A one (1) year guarantee from the treatment date will be issued at Settlement. If during the term of guarantee any additions or alterations are made which affect the structure and create new termite hazards, or interfere with the chemical protective barrier, the guarantee may be voided.

13. **ENVIRONMENTAL CONDITIONS.** Seller makes no warranties, express or implied, about the existing or future environmental conditions of the Property, such as possible present or future pollution of air, water or soil from underground migration or seepage (including radon gas) or any other source, and disclaims any liability for damages arising out of any existing or future environmental conditions of the Property.

a. **NOTICE AND AGREEMENT REGARDING RADON GAS.** All parties agree that Seller makes no warranty or representation of any kind, implied or expressed, regarding the presence or effect of radon gas on or in the proximity of the Property. Furthermore, Seller will not be responsible for any damages caused by radon gas as a result of the action or neglect by the owner or by any agent of the owner, to include, but not limited to, property damage, personal injury, loss of income, emotional distress, death, loss of use, loss of value, and adverse health effects, or any other effects. Seller has performed no tests for the presence of radon gas on or around the Property, Seller makes no representations, of any kind, regarding the present or future existence of radon gas or about acceptable levels of radon gas in or around the Property. Further, without limiting any other limitation of warranties provided or to be provided by Seller herein, Seller disclaims any warranty, express or implied, including, but not limited to, warranties of good workmanship, habitability, merchantability or fitness for a particular purpose, regarding radon gas as it relates to the Property. Buyer releases Seller from any present or future claims or liability of any kind that Buyer may ever have against Seller which in any way relate to the existence of radon gas in or around the Property, including, but not limited to, any expenses Buyer may incur in any radon reduction methods that Buyer may pursue if elevated levels of radon gas ever occur.

For more information on radon gas please contact the United States Environmental Protection Agency, Office of Air and Radiation, at EPA Region 3, Mid-Atlantic Region, 1650 Arch Street, Philadelphia, PA 19103-2029, Phone   1-800-438-2474, www.epa.gov/iaq.

b. **NOTICE AND AGREEMENT REGARDING MOLD.** All parties agree that Seller makes no warranty or representation of any kind, implied or expressed, regarding the presence or effect of mold on or in the proximity of the Property. Furthermore, Seller will not be responsible for any damages caused by mold as a result of the action or neglect by the owner or by any agent of the owner, to include, but not limited to, property damage, personal injury, loss of income, emotional distress, death, loss of use, loss of value, and adverse health effects, or any other effects. Seller has not performed air or surface tests for mold on or around the Property. Seller makes no representations, of any kind, regarding the present or future existence of mold or about acceptable levels of or types of mold in or around the Property. Further, without limiting any other limitation of warranties provided or to be provided by Seller herein, Seller disclaims any warranty, express or implied, including, buy not limited to, warranties of good workmanship, habitability, merchantability or fitness for a particular purpose, regarding mold as it relates to the Property. Buyer releases Seller from any present or future claims or liability of any kind that Buyer may ever have against Seller, which in any way relate to the existence of mold in or around the Property, including, but not limited to, any expenses Buyer may incur in any mold abatement methods that Buyer may pursue if mold occurs on the Property.

Initials _RX_

2/1/2018

For more information on mold, please contact the United States Environmental Protection Agency, Office of Air and Radiation, at EPA Region 3, Mid-Atlantic Region, 1650 Arch Street, Philadelphia, PA 19103-2029, Phone    1-800-438-2474, www.epa.gov/iaq.

    c.    NOTICE AND AGREEMENT REGARDING COAL MINES AND MINING OPERATIONS. Seller has no knowledge of (i) whether mining operations have previously been conducted on the Property, or (ii) the presence of abandoned mines, shafts or pits.

14. ORIENTATION. Buyer and Seller hereby agree that Seller is solely responsible for determining when a house is ready for a walk-thru. The Orientation is necessary to instruct the Buyer on the working components of the house as well as prepare a punch list of items that need to be addressed. An Orientation enables Seller to generate one list of concerns and/or improvements that need to be completed. During the Orientation, the Buyer will sign a Warranty / Orientation Checklist, which will indicate the Buyer's acceptance of the home and any items that may require further attention by Seller. Only items indicated on this Warranty / Orientation Checklist will constitute the final punch list. Seller reserves the right to complete any or all of these identified items after the Settlement Date; however, Seller will make every effort to address as many items as possible before Settlement. If it is determined by Seller that closing is delayed because the Buyer is unwilling to attend an Orientation or unwilling to comply with walk-thru procedures, then the Buyer hereby agrees to void their right to an Orientation as well as compensate Seller for a delayed closing in the amount of $100.00 per day for each day Settlement is postponed from the Agreement Settlement Date.

15. MARKETING. Buyer and Seller herby agree that Seller has permission to market home under construction including but not limited to taking marketing photos and advertising using photos on MLS (Multiple Listings Services), Shurm Homes website, or any other website, flyer, etc. where Seller has deemed it necessary to advertise for business promotion. Buyer also gives Seller permission to show the home under construction to potential buyers and from time to time hold realtor open houses for promotion of Shurm Homes during construction.

16. STATUTORY DISCLOSURES.

    a.    POSSIBLE FILING OF MECHANIC'S LIEN NOTICE. Virginia Law (Virginia Code Sections 43-1 et seq.) permit persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 days from the time the construction, removal, repair or improvement terminated. An effective lien for work performed prior to the Settlement Date may be filed after settlement. Legal Counsel should be consulted.

    b.    CHOICE OF SETTLEMENT AGENT. You have the right to select a Settlement Agent to handle the closing of this transaction. The Settlement Agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the Purchase Price if financed, your Lender will instruct the Settlement Agent as to the signing and recording of the loan documents and the disbursement of loan proceeds. No Settlement Agent can provide legal advice to any party to the transaction except a Settlement Agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party. Escrow, closing and settlement service guidelines: The Virginia State Bar issues guidelines to help Settlement Agents avoid and prevent unauthorized practice of law in connection with furnishing escrow, settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from you Settlement Agent, upon request, in accordance with the provisions of the Consumer Real Estate Settlement Protection Act.

    c.    PROPERTY OWNER'S ASSOCIATION DISCLOSURE. The Seller represents that the Property ☑ is OR ☐ is not located within a development, which is subject to the Virginia Property Owners' Association Act (55-508 et seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires the Seller to obtain from the Property Owners' Association an association disclosure packet and provide it to the Buyer. Buyer may cancel this Agreement within three (3) days after receiving the association disclosure packet or being notified that the association disclosure packet will not be available. Any rights of the Buyer to cancel this Agreement under the Property Owner's Association Act are waived conclusively if not exercised prior to Settlement. All assessment payable to the property owner's association shall be prorated to the date of Settlement.

    d.    VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT. (the "Act") (Virginia Code 55-517 et seq.). Transfers involving the first sale of a dwelling are specifically excluded from the provisions of this chapter, except that a builder of a new home must disclose to a Buyer in writing all known material defects, which would constitute a violation of any applicable building code. This disclosure does not abrogate any warranty or other obligation the builder my have to the Buyer. The builder may not satisfy its obligations under the Act by furnishing a disclaimer statement. Buyer should exercise whatever due diligence is deemed necessary with respect to information on any sexual offenders registered under Chapter 23 (19.2-387 et seq.) of Title 19.2 whether owner proceeds under subdivision 1 or 2 of subsection A of 55.19. Such information may

Initials _RDC_

2/1/2018

be obtained by contacting your local police department or the Department of State Police, Central Criminal Records Exchange at (804) 674-2000 or www.vsp.state.va.us.

17. **REAL ESTATE AGENCY DISCLOSURES AND COMMISSION.** Buyer agrees that in connection with this Agreement _____REALTY RICHMOND_____ ("Listing Broker") represents Seller and _____CENTURY 21 oPT 1_____ ("Selling Broker") represents Buyer. Any other agency relationship must be disclosed, agreed to, and made part of this Agreement by written addendum.

Selling Broker is to be paid a fee of _____2.5_____% of the Purchase Price by Seller. Listing Broker is to be paid the fee stated in the brokerage agreement. Buyer has personally visited and inspected the Property and the home (if the home is under construction or completed) and has decided to purchase it as a result of such inspection and not because of or in reliance upon any representations made by Seller, any of its officers, partners, employees, agents or independent contractors.

Each party hereunder represents that it did not consult or deal with any other broker or agent, real estate or otherwise, with regard to this Agreement, and each party hereto agrees to indemnify and hold harmless the other parties from all liability, expense, loss, cost or damage, including reasonable attorney's fees, that may arise by reason of any claim, demand or suit of any agent or broker arising out of facts constituting a breach of the foregoing representations and warranties. The provisions of this paragraph shall survive Settlement.

18. **ADDENDA.** The following addenda are made part of this Agreement.
- ☒ Standard Features Summary
- ☒ Standard Features Addendum
- ☒ Subdivision Plat
- ☒ Floor Plan
- ☒ Warranty Manual
- ☒ Stages Of Construction Sheet
- ☐ Other _____

19. **ADDITIONAL TERMS:**

_____
_____
_____
_____

20. **BINDING ARBITRATION.** All claims, disputes, and other matters in question between Seller and Buyer arising out of, or relating to, this Agreement, the construction of the Improvements on the Property, any warranty hereunder or the breach thereof, shall be decided by arbitration in accordance with the applicable rules of the American Arbitration Association. All arbitration hearings shall be conducted in the city or county in which the Property is located. Buyer must pay the cost of arbitration when filing a claim. The parties hereto agree that this Agreement to arbitrate shall be enforced under the laws of the Commonwealth of Virginia and the outcome or award rendered by the arbitrators shall be final and binding on all of the parties. If Buyer instigated legal proceeding against Seller for any obligations arising or claims to have arisen under this Agreement prior to giving Seller proper notice and opportunity to cure, Buyer agrees to indemnify Seller, as appropriate, for all costs and expenses of such litigation, including reasonable attorney's fees regardless of whether Buyer has an otherwise legitimate claim under this Agreement. The provisions of this paragraph shall expressly survive Settlement and delivery of the deed.

21. **EQUAL OPPORTUNITIES.** All offers shall be presented and considered without regard to race, color, religion, sex, handicap, familial status, elderliness or national origin, as well as all classes protected by the laws of the United States, the Commonwealth of Virginia, and the applicable local jurisdiction.

22. **DEFAULT.**

    a.   BUYER'S DEFAULT. Buyer shall be in default if Buyer: (i) fails to make payment on or before the date scheduled in this Agreement; (ii) fails to accept title at Settlement; or (iii) fails to comply with any of the terms and conditions of this Agreement. Upon any default under this Agreement by Buyer, Seller may in its sole discretion, elect to do any one or more of the following: (i) cancel this Agreement and retain the liquidated damages and not as penalty all sums including the Deposit; (ii) seek specific performance of this Agreement or any part of it in any court of competent jurisdiction; (iii) terminate this Agreement, and retain the Deposit; and (iv) pursue any other legal or equitable right or remedy. All rights and remedies of Seller are cumulative and not exclusive. Buyer hereby releases and waives its vendee's lien and any rights thereto and all rights to sue in equity for specific performance of any other equitable relief.

    b.   SHURM CONSTRUCTION, INC'S DEFAULT. If Seller fails or refuses to perform, and the sale and purchase of the Property contemplated by this Agreement is not consummated, the Deposit and any other sums paid by Buyer to Seller shall be refunded without interest to Buyer on demand.

Initials RDC

2/1/2018

23. **TIME IS OF THE ESSENCE.** Time is of the essence for this Agreement. This means that the failure to do what is required within the timeframes specified in this Agreement is a default under the Agreement.

24. **ACCEPTANCE.** This Agreement executed by the Buyer shall be deemed as an offer until accepted by Seller. Seller's acceptance shall be evidenced by delivery of one (1) fully executed, unaltered copy of this Agreement to the Buyer or an agent for the Buyer. Seller and Buyer agree that this offer or any counteroffer can be withdrawn prior to acceptance without penalty.

25. **THIS IS A LEGALLY BINDING CONTRACT.** Read and understand all provisions prior to signing. If not understood seek legal or other competent advice. If Buyer signs below, it shall be conclusively presumed that Buyer has fully read and understood all of the terms of this Agreement.

**The Buyer(s) acknowledge that they have read and fully understand the contents of this Agreement.**

_RDC_ (Initials) _____ (Initials)

BUYER:

Purchaser

Date 7/21/2018

Purchaser

Date

SELLER: Shurm Construction, Inc.

John Shurm, Jr.

Title _President_

Date 7/23/18

**BUYER INFORMATION**

Address _6464 Springcrest LN_ _Henrico, VA 23231_

Home Phone

Cell Phone

Work Phone

Email

**SELLER INFORMATION**

P.O. Box 66
Mechanicsville, VA 23111

newhomes@shurmhomes.com

**SELLING AGENT**

_Jeff Kersey_
Printed Name

_Century 21 Option1_
Firm Name

_804 615-4358_
Phone Number

_JKersey@c21option1.com_
Fax Number EMAIL

_8620 Quioccasin Road_
_Richmond VA. 23229_
Address

**LISTING AGENT**

_Mike/Doug_
Printed Name

Firm Name

Phone Number

Fax Number

Address

Page 8 of 8         Initials _RDC_

2/1/2018

Label Matrix for local noticing
0422-3
Case 16-32472-KRH
Eastern District of Virginia
Richmond
Tue May  8 13:42:41 EDT 2018

Capital One Auto Finance
P.O. Box 201347
Arlington, TX 76006-1347

Capital One Auto Finance c/o AIS Portfolio S
P.O. BOX 4360
Houston, TX 77210-4360

Capital One Auto Finance c/o AIS Portfolio S
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Henrico County, Virginia
HENRICO CONTY
P.O. BOX 90775
HENRICO, VA 23273-0775

United States Bankruptcy Court
701 East Broad Street
Richmond, VA 23219-1888

AMCA
P.O. Box 1235
Elmsford, NY 10523-0935

Account Control Systems, Inc.
85 Chestnut Ridge Rd.
Suite 113
Montvale, NJ 07645-1836

Ashley Funding Services, LLC its successors
assigns as assignee of Laboratory
Corporation of America Holdings
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

Bon Secours Memorial Regional Med Ctr
c/o Patrick F. Heinen, Esq.
Spinella, Owings & Shaia, P.C.
8550 Mayland Dr.
Richmond, VA 23294-4704

Bureaus Investment Group Portfolio No 15 LLC
c/o Recovery Management Systems Corp
25 SE 2nd Avenue Suite 1120
Miami FL 33131-1605

COUNTY OF HENRICO, VIRGINIA
ANDREW R. NEWBY
ASSISTANT COUNTY ATTORNEY
P.O. BOX 90775
HENRICO, VIRGINIA 23273-0775

Capital One
Po Box 30285
Salt Lake City, UT 84130-0285

Capital One Auto Finance
7933 Preston Rd
Plano, TX 75024-2302

Capital One Auto Finance, a division of Capi
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Capital One Auto Finance, c/o Ascension Capi
P.O. Box 201347
Arlington, TX 76006-1347

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC  28272-1083

Comenity Bank/Victoria Secret
Po Box 18215
Columbus, OH 43218-0000

Commonwealth of Virginia
Department of Taxation
P.O. Box 2156
Richmond, VA 23218-2156

County of Henrico, VA
PO Box 90775
Dept of Finance
Henrico, VA 23273-0775

Department Store National Bank
c/o Quantum3 Group LLC
PO Box 657
Kirkland, WA  98083-0657

Dr. Overton Wiley Kirchmer
10410 Ridgefield Pkwy.
Henrico, VA 23233-3500

ECMC
PO Box 16408
St. Paul, MN 55116-0408

Ecmc
1 Imation Place
Bldg 2
Oakdale, MN 55128-3422

FMS, Inc.
PO Box 707600
Tulsa, OK 74170-7600

Firstsource Advantage, LLC
PO Box 628
Buffalo, NY 14240-0628

(p)FOCUSED RECOVERY SOLUTIONS
9701 METROPOLITAN COURT
STE B
RICHMOND VA 23236-3690

Ginny's
c/o Creditors Bankruptcy Service
P.O. Box 800849
Dallas, TX 75380-0849

Ginnys/Swiss Colony Inc
1112 7th Ave
Monroe, WI 53566-1364

Glasser & Glasser
580 E. Main St.
Suite 600
Norfolk, VA 23510-2322

Henrico Area Mental Health
10299 Woodman Rd.
Glen Allen, VA 23060-4419

IC System, Inc.
444 Highway 96 East
Po Box 64378
St Paul, MN 55164-0378

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346


Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

MCV HOSPITAL
P O BOX 980462
RICHMOND, VA 23298-0462

MCV Physicians
PO Box 91747
Richmond, VA 23291-9747


MIDLAND FUNDING LLC
PO Box 2011
Warren, MI 48090-2011

Midland Funding
2365 Northside Dr
Suite 300
San Diego, CA 92108-2709

POM Recoveries
PO Box 602
Lindenhurst, NY 11757-0602


Pediatric Center
10571 Telegraph Rd.
Suite 110
Glen Allen, VA 23059-4652

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Professional Bureau of Collect
P.O. Box 4157
Englewood, CO 80155-4157


Receivables Performance Mgmt
Attn: Bankruptcy
Po Box 1548
Lynnwood, WA 98046-1548

Synchrony Bank/PayPal Cr
Attn: Bankruptcy
Po Box 103104
Roswell, GA 30076-9104

Synchrony Bank/Walmart
Attn: Bankruptcy
Po Box 103104
Roswell, GA 30076-9104


TD Bank USA, N.A.
C O WEINSTEIN & RILEY, PS
2001 WESTERN AVENUE, STE 400
SEATTLE, WA 98121-3132

Target
C/O Financial & Retail Services
Mailstop BT PO Box 9475
Minneapolis, MN 55440-9475

The Bureaus Inc.
650 Dundee Rd
Ste 370
Northbrook, IL 60062-2757


Virginia Department of Tax
P.O. Box 1115
Richmond, VA 23218-1115

Visa Dept Store National Bank
Attn: Bankruptcy
Po Box 8053
Mason, OH 45040-8053

Wells Fargo Auto
Po Box 29704
Phoenix, AZ 85038-9704


Wells Fargo Bank, N.A. - Wells Fargo Auto Fi
PO Box 29706
Phoenix, AZ 85038-9706

James E. Kane
Kane & Papa, PC
1313 East Cary Street
P.O. Box 508
Richmond, VA 23218-0508

Rosina Denise Cook
6464 Springcrest Lane
Henrico, VA 23231-5324


Suzanne E. Wade
P.O. Box 1780
Richmond, VA 23218-1780


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Focused Recovery Solutions
9701-Metropolitan Ct
Ste B
Richmond, VA 23236-0000

Internal Revenue Service
Kansas City, MO 64999-0002

Portfolio Recovery
Attn: Bankruptcy
Po Box 41067
Norfolk, VA 23541-0000

(d)Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Wellsfargo bank n.a.

End of Label Matrix
Mailable recipients      54
Bypassed recipients       1
Total                    55